UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

CALLI M. OTT,                                )
                                             )
        Plaintiff,                           )
                                             )
        v.                                   )        Case No. 1:20-cv-497
                                             )
YOERLANDY RUBIER GONZALEZ and                )
ZIGI FREIGHT INC.,                           )
                                             )
        Defendants.                          )

**OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 41)

Plaintiff Calli Ott brings this Complaint for money damages against Defendants
Yoerlandy Rubier Gonzalez and Zigi Freight, Inc., (collectively "Defendants") pursuant
to Article 51 of the Insurance Law of the State of New York ("No-Fault Law") for
personal injuries allegedly sustained following a motor vehicle accident on January 9,
2018.

Defendants filed a motion for summary judgment on June 1, 2022 (Doc. 41),
arguing that Plaintiff failed to show that her alleged injuries are sufficient to meet a
"serious injury" requisite of the No-Fault Law. They further contend that Plaintiff's
injuries were not proximately caused by the motor vehicle accident and she has not
sustained a financial loss in excess of basic economic loss as required to recover under
the statute. Plaintiff has not filed an opposition.[1]

---

[1] Although Plaintiff has not filed an opposition, Defendants are not entitled to summary
judgment by default. *See* Fed. R. Civ. P. 56(e)(3) (instructing courts to grant summary judgment
"if the motion and supporting materials--including the facts considered undisputed--show that
the movant is entitled to it"); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[I]t is
clear that even when a nonmoving party chooses the perilous path of failing to submit a response
to a summary judgment motion, the district court may not grant the motion without first

Plaintiff is represented by Frank M. Bogulski, Esq. Defendants are represented by Donna L. Burden, Esq. and Phyliss A. Hafner, Esq.

## I.     The Undisputed Facts.

Defendants' statement of undisputed material facts in support of their motion for summary judgment was not disputed by Plaintiff as required by Fed. R. Civ. P. 56(c) and L.R. 56. It is therefore deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

### A. The 2018 Collision and Procedural History.

Plaintiff initially brought this action in state court to recover money damages for personal injuries allegedly sustained following a motor vehicle accident on January 9, 2018 on Interstate 90 in the Town of Cheektowaga, New York. Plaintiff alleges that Defendant Gonzalez, an employee of Defendant Zigi Freight, Inc., negligently caused his tractor trailer to strike the back of Plaintiff's car in a rear-end collision. As a result, Plaintiff alleges in her Complaint that she sustained serious injuries to her neck, back, and arm. In her Verified Bill of Particulars, Plaintiff explains that she "sustained a twisted muscle in her left shoulder that affects her arm[,]" "a blood tumor on her spine[,]" "psychological injuries" including anxiety, and that she "still experiences substantial pain in her arm." (Doc. 41-4 at 26, ¶ 13a-b.) GEICO is the no-fault carrier for Plaintiff.

Plaintiff filed her complaint in state court on May 23, 2019. Defendants filed an answer to the complaint on September 6, 2019 and removed this matter to federal court on April 24, 2020.

---

examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

Defendants served Plaintiff with a Demand for Verified Bill of Particulars on September 6, 2019 and a First Set of Interrogatories on June 24, 2021. Plaintiff filed her Verified Bill of Particulars on October 15, 2021 and responded to Defendants' Request for Interrogatories on November 9, 2021.

### B. Plaintiff's Relevant Medical History and Previous Motor Vehicle Accidents

Prior to the 2018 collision, Plaintiff received treatment for back pain and had been diagnosed with fibromyalgia, sensitivity to light touch on her arm and skin, and migraines. Plaintiff's medical records reveal that she was involved in motor vehicle accidents in 1998 or 1999 and again in 2007. Plaintiff was also involved in a "fender bender" in 2014, for which she does not appear to have sought medical treatment. *See* Doc. 41-10 at 71 (explaining that Plaintiff reported no injuries from her 2014 accident and did not seek medical attention).

Records from 2018 indicate that Plaintiff informed medical professionals that she had been "involved in a prior motor vehicle accident in approximately 1998[,]" from which she suffered "a cervical 'whiplash' injury which resolved." (Doc. 41-9 at 30.) Records from 2018 with a treatment provider reveal that Plaintiff reported "having a prior accident in 1999, and state[d] that she is having residual problems." (Doc. 41-10 at 71.) Chiropractor Michael Trombitas, DC, recorded Plaintiff's explanation of these residual symptoms: "Still has intermittent pain, hears neck 'Cracking' 'like someone's squishing bubble wrap[.]'" *Id.* Dr. Trombitas further noted: "Was rear-ended. Cannot remember name of Doctor who treated her. Diagnosed with whiplash of the cervical spine." *Id.* (internal quotation marks omitted.)

On November 28, 2007, Plaintiff received treatment at Lockport Memorial Hospital following a motor vehicle accident on the previous day for complaints of an injury to her left shoulder, humerus, and elbow. Imaging showed no evidence of acute fracture or dislocation. Plaintiff continued to seek treatment on December 5, 2007 and January 14, 2008 for left arm pain and on April 7, 2008 for left arm pain and numbness.

3

On May 19, 2008, Plaintiff received an MRI of her cervical spine. At the time, her medical history included "neck pain, left upper extremity pain/weakness" following her November 27, 2007 motor vehicle accident. (Doc. 42 at 27.) The MRI showed that "[a]t the C5-6 level, there is a minimal central disc herniation of the protrusion type measuring less than 2 mm in AP dimension, which minimally impinges upon the anterior subarachnoid space at this level." *Id.*

Plaintiff was evaluated by Dr. Young J. Yu, MD at Brain and Spine Center on December 18, 2008. (Doc. 42 at 22.) Office notes from this appointment show that Plaintiff complained of "severe neck pain and left side radicular arm pain[,]" "left side lower back pain of radiating nature[,]" and "some numbness and tingling . . . in the left hand" following the November 27, 2007 motor vehicle accident. *Id.* Dr. Yu diagnosed Plaintiff with "[p]ossible cervical disc herniation with predominant left side radiculopathy" and ordered an additional MRI of Plaintiff's cervical spine, *id.* at 23, which Plaintiff received on January 5, 2009. The MRI diagnostic imaging report was "[u]nremarkable except for loss of cervical lordosis consistent with muscle spasm. No demonstration of disc herniation." *Id.* at 25. Plaintiff visited Dr. Yu nine days later to discuss the results of the MRI. Office notes from this appointment again show that there was "no evidence of frank disc herniation[,]" *id.* at 24, and that chiropractic treatment seemed to help Plaintiff to address her symptoms.

Plaintiff saw chiropractor Geoffrey Gerow, DC on March 25, 2009 and complained of neck pain and left upper extremity pain. She indicated that folding many loads of laundry, grocery shopping, and pushing a grocery cart all contributed to her pain or caused it to increase. Notes show that Plaintiff had previously seen Dr. Gerow on August 19, 2008. He described Plaintiff's history as "compatible with a cervical strain/sprain." *Id.* at 35.

In her initial evaluation with Dr. Trombitas on January 24, 2018, Plaintiff reported a motor vehicle accident in 2014 but denied residual problems. Treatment notes described the accident as follows: "No Doctor sought out, was just a fender bender. No injuries reported." (Doc. 41-10 at 71.)

4

On January 27, 2014, Plaintiff received x-rays of her lumbosacral spine and dorsal thoracic spine at Eastern Niagara Hospital, which showed no evidence of fracture or dislocation. The images of Plaintiff's lumbosacral spine showed "straightening of the normal lordotic curvature of the lumbosacral spine," which Plaintiff's medical providers indicated "may be due to muscular spasm[,]" and the images of Plaintiff's dorsal thoracic spine showed "[a]nterior spondylytic changes[.]" (Doc. 41-7 at 4-5.) Her clinical history on these records indicated that she experienced "chronic mid and low back pain." *Id.* at 4-5.

Plaintiff received a physical examination on February 15, 2017 from Eastern Niagara Medical Group, at which she complained of migraines, back pain, plantar pain, and anxiety. Notes from this visit indicated that Plaintiff occasionally complained "of skin very sensitive" that "hurt[] when touched." (Doc. 41-8 at 6.) Plaintiff also sought a referral to a neurologist for migraines. Her relevant medical history from this visit included fibromyalgia, neuropathy, and migraines. Her treatment provider recommended physical therapy for Plaintiff's low back pain and other ailments. Two months later, Plaintiff returned to Eastern Niagara Medical Group for a follow-up regarding her lower back pain after she alleged that physical therapy worsened her symptoms. She also sought treatment for migraines.

Following the January 9, 2018 motor vehicle accident, Plaintiff received treatment at Sisters of Charity Hospital in Cheektowaga, New York the same day as the accident. Treatment notes indicate that Plaintiff reported that she had been the driver, was wearing her seatbelt, hit the back of her head on her seat, and that the air bags were not deployed. (Doc. 41-11 at 8.) She reported shoulder pain, low back pain, and a headache. Plaintiff received x-rays of her cervical spine, thoracic spine, lumbar spine, left shoulder, and a CT scan of her head, none of which showed fracture, subluxation, or "evidence of bony injury[.]"[2] *Id.* at 10.

---

[2] Plaintiff's cervical spine x-ray showed "minor osteophytic encroachment on the right foramen at C6-7" and "[p]revertebral soft tissues and apical chest [were] within normal limits." Plaintiff's thoracic spine x-ray showed that "[m]ild endplate spurring [was] present at several levels" and

Approximately two weeks later, Plaintiff was evaluated for the first time by Dr. Trombitas at HealingHands Chiropractic in Lockport, New York. Plaintiff reported suffering injuries sustained in the January 9, 2018 motor vehicle accident. On her patient intake form, Plaintiff recorded a history of migraines, numbness in left arm, tingling sensation in left arm to fingers, and weakness in left arm following a motor vehicle accident. She also noted that she was diagnosed with arthritis in 2008 and had suffered from fibromyalgia for eighteen years and nonspecific back pain for ten.

Dr. Trombitas recorded that Plaintiff experienced "headaches, neck pain, low back pain, and pain in left shoulder blade, left shoulder, left upper posterior arm, and left elbow, left lower posterior arm, left wrist, and left hand" immediately following the collision. (Doc. 41-10 at 70.) Plaintiff reported that she was experiencing an increase in symptoms, that she had not been able to perform normal work activities, that she "had problems with grooming, dressing, typing, grasping, holding, leaning, bending, twisting, carrying, lifting, pushing, pulling, reaching, sitting, exercising, lying down, restful sleeping, insomnia, and loss of concentration" and trouble falling asleep. *Id.* Her relevant past medical history included headaches, lower leg or knee pain, low back pain, pain in her upper leg and hip, arthritis, and neck pain. *Id.* at 71. During her evaluation, Plaintiff complained of headaches, left shoulder blade pain, left arm pain that included numbness and tingling, left side neck pain, left side midback pain, and left side lower back pain. *Id.* at 72. Plaintiff also complained of musculoskeletal symptoms, including "arthritis,

---

that her "soft tissues are unremarkable." Plaintiff's lumbar spine x-ray showed that "[m]ild anterior endplate spurring [was] present at several levels[,]" that there was "mild diminution in height of the L5-S1 disc space[,]" that "[m]ild degenerative changes [were] seen in some lower facets[,]" and that "[u]tilized portions of [her] bony pelvis [were] unremarkable." Plaintiff's left shoulder x-ray showed that her "glenohumeral joint and acromioclavicular joint [were] unremarkable" and her "soft tissues [were] within normal limits." Plaintiff's cranial CT scan showed no evidence of any acute change, hemorrhage, mass effect, or mass lesion. It also showed no chronic change, volume loss, ventricles were within normal limits, "visualized paranasal sinuses [were] grossly clear[,]" and "skull and visualized extracranial soft tissues [were] grossly normal." (Doc. 41-11 at 3-4, 7-10.)

chronic fatigue, fibromyalgia, joint pain, muscle aches, muscle cramps, neck pain, nonspecific back pain, scoliosis, and stiffness[.]" *Id.*

Upon examination, Dr. Trombitas found that Plaintiff's range of motion was within normal limits for her spine and shoulders. Her thoracic spine was reduced on flexion, and her left shoulder was less mobile than her right one. *Id.* at 76.

Dr. Trombitas opined that, in his professional opinion, Plaintiff's "injuries are a direct result of her accident which reportedly occurred on 01/09/2018. The injuries sustained in this [motor vehicle accident] appear to have aggravated her previous cervical spine complaints[ .]" (Doc. 41-10 at 82.) He stated that Plaintiff "should not be considered disabled at this time and can . . . return to and perform the normal duties of her previous occupation and her general activities of daily living[,]" although he advised her to avoid activities that might aggravate her injury. *Id.*

Plaintiff returned to Dr. Trombitas for treatment from January to April 2018 on an approximately weekly basis, complaining of left shoulder, left arm, neck, mid back, and low back pain. At these appointments, Dr. Trombitas determined whether Plaintiff's range of motion was restricted. Plaintiff received MRIs of her left shoulder on March 23, 2018; cervical and thoracic spine on March 26, 2018; and lumbar spine on March 29, 2018. On April 12, 2018, Plaintiff saw Dr. Trombitas and he noted that "treatment is not helping" Plaintiff and that he and Plaintiff "agreed that Chiropractic is not benefiting her." *Id.* at 43.

On March 19, 2018, Plaintiff was treated by chiropractor Sean Higgins, DC in Orchard Park, New York at GEICO's request. Dr. Higgins described Plaintiff as being involved in a January 9, 2018 motor vehicle accident and complaining of:

> cervical spine pain which seems to radiate from the left upper extremity and left shoulder when her left upper extremity hurts 'really bad'. She has left upper extremity pain which radiates from the mid forearm up to the left shoulder. This is constant and exacerbated by use of the left upper extremity.

(Doc. 41-9 at 30.)

Dr. Higgins noted that Plaintiff had been involved in a similar motor vehicle accident in 1998 which resulted in a resolved cervical whiplash injury. He diagnosed Plaintiff with sprains/strains of the cervical and thoracic spine but noted these problems were resolving. He recommended eight weeks of chiropractic treatment and found that Plaintiff did not need household help, durable medical equipment, or transportation assistance.

Thereafter, Plaintiff sought treatment at University at Buffalo Neurosurgery, where she was seen by Emily Grisante, PA, and John G. Fahrbach, MD on June 5, 2018 for "severe neck pain radiating dow[n] her left arm and low back pain radiating down her left leg" following the January 9, 2018 motor vehicle accident, as well as "burning, numbness[,] and tingling[.]" (Doc. 41-8 at 30-31.)[3] They noted that Plaintiff had a limited range of motion on her cervical and lumbar spine due to pain. They recommended physical therapy and indicated that he would refer Plaintiff to "Dr. Wong's team." *Id.*

Two weeks later, Plaintiff saw Andrea Wong, MD at University at Buffalo Neurosurgery. Plaintiff complained of pain following the January 9, 2018 motor vehicle accident that "start[s] in the back of her shoulder area and radiates to the left neck area and down the upper arm and arm" as well as anxiety. *Id.* at 32. Dr. Wong concluded that Plaintiff's symptoms were "consistent with left shoulder pain" and noted that Plaintiff was "actually holding the arm . . . with her right side, given that any motion at all causes severe pain." *Id.* at 33. Dr. Wong's "[e]xamination of [Plaintiff's] muscles/joints/bones show[ed] normal range of motion." *Id.* She recommended an MRI of Plaintiff's left shoulder. If the imaging did not show abnormalities, Dr. Wong recorded she would consider "trigger point injections." *Id.*

---

[3] In their Statement of Undisputed Material Facts, Defendants claim that Dr. Fahrbach did not see Plaintiff for injuries she alleges were sustained in the January 9, 2018 motor vehicle accident. (Doc. 41-17 at 8, ¶ 24) ("Dr. Fahrbach did not treat/see the Plaintiff for any injury Plaintiff Ott alleges was sustained in the January 9, 2018, accident.") (emphasis omitted.) The medical records indicate otherwise. *See* Doc. 41-8 at 30 ("She is a 44 year old female with a history of a motor vehicle accident on 01/09/2018. . . . Since then she has had severe neck pain radiating dow[n] her left arm and low back pain radiating down her left leg.").

After Plaintiff's left shoulder MRI, Dr. Wong noted that Plaintiff's pain had not changed and that "[n]othing has alleviated the pain thus far." *Id.* at 35-37. Dr. Wong reviewed the MRI and found "no evidence of fracture, labrum tear, or rotator cuff tear." (Doc. 41-8 at 36.) She also reviewed the results of Plaintiff's March 2018 cervical, thoracic, and lumbar MRI and found "no central canal or neural foraminal narrowing." *Id.* Based on Plaintiff's medical history and upon examination, Dr. Wong concluded that "[Plaintiff's] symptoms are consistent with myalgia. The shoulder MRI is completely unremarkable." Dr. Wong again noted that Plaintiff's "muscles/joints/bones show[ed] normal range of motion," *id.* at 36-37, and she offered Plaintiff a new prescription for physical therapy, which Plaintiff refused.

On September 11, 2018, Dr. Wong treated Plaintiff for her "[c]hronic left-sided neck and shoulder pain" with trigger point injections. *Id.* at 38-39. Dr. Wong continued to describe Plaintiff's range of motion as "normal" and offered a new prescription for physical therapy, which Plaintiff again refused. *Id.* at 38-41.

Over nine months later, Plaintiff sought treatment at Advantage Physical Therapy in Lockport, New York on June 25, 2019 for lower back pain, which was described as "[p]resent for 10 years." *Id.* at 43. Plaintiff's treating physical therapist, Nick Davidson, DPT noted that Plaintiff experienced "decreased joint mobility/integrity" and a "decreased range of motion[.]" (Doc. 41-8 at 44.) He described Plaintiff's symptoms as being "associated with a diagnosis consistent with [s]ciatica." *Id.*

Plaintiff's Expert Witness Disclosure contained a report from Paul Paterson, MD dated January 9, 2020. (Doc. 41-12.) Dr. Paterson noted that Plaintiff complained of "numbness and tingling in the entire left arm[,]" that "[s]ymptoms worsen with lifting, reaching[,] and [overuse]" but "improve minimally with bracing an[d] rest." *Id.* at 3. In describing Plaintiff's past medical history, Dr. Paterson listed "[w]rist joint pain," "[c]arpal tunnel syndrome of left wrist[,]" and anxiety. He also measured Plaintiff's range of motion and found "[f]ull range of motion of the cervical spine" but that if Plaintiff bent her head to the right, she could "re-create symptoms down into her left hand." *Id.* at 4. Dr. Paterson recorded that Plaintiff had "[f]ull [range of motion]" of her left wrist and

digits. *Id.* Dr. Paterson listed "[i]njury" under an "[a]ccidents" heading, but otherwise did not reference the January 9, 2018 motor vehicle accident. *Id.* at 3. He offered Plaintiff surgical treatment of her left cubital and carpal tunnel syndrome, which Plaintiff appears to have accepted.

Finally, Plaintiff was seen for an Independent Medical Examination ("IME") with Michael Maloney, MD in Orchard Park, New York on June 24, 2021. Plaintiff reported a left shoulder and carpal tunnel injury arising from the January 9, 2018 accident and complained of pain in her left arm, trapezius, and scapula. She informed Dr. Maloney that she did not have future appointments scheduled with Dr. Paterson and further stated that the carpal tunnel surgery performed by Dr. Paterson did not help with the numbness in her hand.

In addition to his physical examination of Plaintiff, Dr. Maloney reviewed legal records, film reports, medical records, and imaging studies before concluding that there was "no medical evidence from an imaging standpoint that documents any traumatic structural injury attributable to [Plaintiff's] involvement in the motor vehicle accident" and "no medical evidence of structural trauma to [Plaintiff's] left shoulder including the rotator cuff, labrum, the cartilage, or the bones." (Doc. 41-15 at 14-15.) Dr. Maloney determined that Plaintiff "sustained a sprain/strain of her left shoulder" during the January 9, 2018 crash. *Id.* As for the carpal tunnel injury and resulting surgery, Dr. Maloney concluded that it was not causally related to the January 9, 2018 accident.

### C. Verified Bill of Particulars.

In her Verified Bill of Particulars, Plaintiff stated that Defendant Gonzalez "caused the accident by not paying attention to the traffic conditions, following too closely, and striking the Plaintiff's vehicle from behind." (Doc. 41-4 at 26, ¶ 5.) She asserted that she "sustained a twisted muscle in her left shoulder that affects her arm along with a blood tumor on her spine" during the accident and, as a result, could not "drive on thruways and therefore is unable to go many places, such as [to] a camp she once enjoyed." *Id.* at ¶ 13a. Because the injuries were described as "ongoing[,]" Plaintiff stated that it was "not known which of these injuries is permanent." *Id.* at ¶ 13c.

Plaintiff stated that she "sustained a serious injury as defined by New York State Insurance Law § 5102(d)" due to "a significant limitation of the use of her left arm" and "a significant limitation by the anxiety she has developed as a result of the accident[,]" which left her unable to drive on highways. *Id.* at 27, ¶ 19. Plaintiff also claims to have suffered a "medically determined injury or impairment of a possibly non-permanent nature that prevented her from performing all [or] substantially all of the material acts which constitute her usual and customary daily activities for 90 out of the [180] days immediately following the accident." *Id.* She asserted that "she cannot do anything that requires both hands, such as lifting things, folding laundry, vacuuming, and pushing a lawn mower." *Id.* Plaintiff claimed that "[s]he continues to drop things because of the pain in her left arm. . . . She has also lost her fine motor skills in this hand." (Doc. 41-4 at 27, ¶ 19.) She was unable to perform her daily activities "since the day of the accident until present." *Id.*

In her response to Defendants' Request for Interrogatories, Plaintiff stated she "suffered a twisted muscle in her left shoulder, a blood tumor on her spine[,] and PTSD." (Doc. 41-6 at 7, ¶ 4a.) She further stated that she "continues to suffer from anxiety, pain in her left arm, loss of fine motor skills in her left hand, [and] inability to pick up or grip anything with her left hand." *Id.* at 8, ¶ 4b. Plaintiff indicated that it was "unknown" which, if any, of those injuries would be permanent. *Id.* at ¶ 4c. She responded to No-Fault Law interrogatories as follows:

> If it is claimed that the injured Plaintiff is qualified to sue [for] pain and suffering under New York State No-Fault Insurance Law, state the exact manner in which compliance with the Insurance Law is alleged, including the precise nature of the "serious injury" which she claims to have sustained as that term is defined by Insurance Law § 5102(d):
>
> a) if "significant disfigurement" is claimed, state the exact manner and location of the alleged disfigurement;
>
> **Response**
>
> Plaintiff did sustain a scar on her left arm.
>
> b) if a fracture is claimed, identify each and every fracture allegedly sustained by the injured Plaintiff;

11

**Response**

Plaintiff is not claiming a fracture.

c) if a "permanent loss of use of a body organ, member function, or system" is claimed, identify particularly the exact "organ, member, function, or system" with respect to which permanent loss is claimed;

**Response**

Plaintiff is alleging a permanent and significant loss of the use of her left arm. She is unable to lift the arm to a position that is above her head or higher than her shoulders since the accident. In addition her left hand has suffered a permanent loss of strength and ability to grasp items for any time longer than extremely short periods. These problems were so severe that she eventually was forced to undergo carpal tunnel surgery at Buffalo Surgery Center on February 26, 2020. Despite this surgery, problems of weakness and loss of use of her left hand still linger to this day.

d) if a "permanent consequential limitation of use of a body organ or member" is claimed, identify each body, organ, or member for which such claim is made and describe the "consequential limitation of use" which is alleged;

**Response**

Plaintiff is alleging a loss of the full range of motion in her left arm, as well as the loss of fine motor skills and strength in Plaintiff's left hand which will be ongoing in to the future and cause permanent limitations. Plaintiff is unable to hold small household items for prolonged periods of time, struggles to open many items, and at times is forced to use her teeth to accomplish basic tasks for which she formerly would have used her hand. Plaintiff also suffers from severe anxiety relating to her lack of ability to use her hand or arm. These problems were so severe that she eventually was forced to undergo carpal tunnel surgery at Buffalo Surgery Center on February 26, 2020. Despite this surgery, problems of weakness and loss of use of her left hand still linger to this day.

e) if a "significant limitation of use of a body function or system" is claimed, identify the body function or system for which such a claim is made and describe the "significant limitation of use" which is alleged;

12

**Response**

Plaintiff has suffered significant limitation of use to her left arm in that she cannot lift, fold laundry, vacuum or push a lawn mower. She cannot grip items and drops things due to pain and loss of fine motor skills in her left hand. These problems were so severe that she eventually was forced to undergo carpal tunnel surgery at Buffalo Surgery Center on February 26, 2020. Despite this surgery, problems of weakness and loss of use of her left hand still linger to this day. Further, the anxiety suffered as a result of the PTSD caused by the accident herein, has limited the Plaintiff's ability drive/ride in a motor vehicle, particularly, she is extremely limited in her ability to travel on highways, in heavy traffic, or anywhere where there may be a tractor trailer. When Plaintiff does travel on the road, she has an intense preference for periods of low traffic and will often forestall plans to travel until she knows traffic will be less intense.

f) if a "medically determined injury or impairment of a non-permanent nature" which prevents Plaintiff from performing substantially all of the material acts which constitute their usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment is claimed, identify in detail, the particular injury or impairment which is claimed to have an effect and identify by date each day within 180 immediately following the accident on which they were prevented substantially all of the material acts which constituted their usual and customary daily activities;

**Response**

All of the injuries and activities described in number "6" were sustained in and affected by the accident herein at the time of the accident and have been ongoing since the accident. In the immediate aftermath of Mrs. Ott's accident in January, Mrs. Ott's girls had to cook, clean, and do her laundry for her "well into the summer." In the aftermath of the accident, Mrs. Ott was severely impaired in her ability to grocery shop or engage in shopping generally. It is extremely challenging for her to push a cart or hold bags without assistance by another person. Mrs. Ott used to mow the lawn regularly and has been completely unable to do so since the accident.

Mrs. Ott was severely limited in her ability after the accident to play with her dogs in any capacity that would use her left arm or hand. Mrs. Ott can no longer sweep or mop her home since the accident. She can no longer move baskets of laundry up the stairs. Mrs. Ott is 5 feet tall and used to do her laundry by lifting herself so that she could take laundry out of her washer and put it in the dryer. She is no longer able to use her arm to support herself to do so, or do any laundry folding since the accident. Mrs. Ott suffers regular pain relating to the nerves in her hand, arm, shoulder, neck and upper back. Mrs. Ott also has suffered a blood clot on her upper spine as a result of the injury which can cause pain to randomly radiate from her spine from her back to the affected areas. When the pain occurs the severity can range from low-intensity to extremes she describes as being near a "10" on a FACES pain scale.

*Id.* at 9-14, ¶ 6a-f.

In response to Defendants' Interrogatories, Plaintiff described her economic loss as follows.

g) state every item of economic loss that the Plaintiff will claim was sustained and is greater than the basic economic loss described in Section 5102(a) of the Insurance Law.

**Response**
Mrs. Ott believes she may have re-entered the workforce after her children graduated. She believes that sustaining a full-time job with full-time responsibilities at a level that would reasonably be expected by an employer is now virtually impossible. This is not meant to include alleged non-economic loss, such as pain and suffering, loss of use of physical faculties, mental anguish, or permanent limitations on her daily life that have resulted from the accident.

*Id.* at 10, ¶ 6g.

Plaintiff was asked to state the total dollar amount that she had incurred for healthcare costs, hospital expenses, nurses' services, and all other expenses including but not limited to "prosthetic devices, home care services, outpatient treatment, etc." Plaintiff responded that her "healthcare costs were entirely covered by her health and car insurance providers." *Id.* at 14-16, ¶ 7a-d.

14

Plaintiff responded to questions about loss of earnings as "[n]ot applicable." (Doc. 41-6 at 16, ¶ 8.) When asked to detail "[e]ach and every other item of loss or damage claimed[,]" Plaintiff answered that her "damages [were] entirely encapsulated within the previously discussed pain and suffering, loss of use of her physical faculties, mental anguish, the potential that she could have re-entered the workforce at some point, and the limitations she continues to suffer to this day in going about her daily activities." *Id.* at 17, ¶ 9.

Defendants have provided a ledger detailing GEICO's payments made to Plaintiff resulting from the injury, which consists of $4,059.04 for medical bills incurred from the January 9, 2018 accident. GEICO has not received any medical bills from Plaintiff since March 23, 2020.

## II.   Conclusions of Law and Analysis.

### A.   Summary Judgment Standard.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his [or her] favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

"A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, not all disputes of fact are material. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A denial in an answer is insufficient to create a genuine issue of material fact. *See Attenborough v. Constr. & Gen. Bldg. Laborers' 79*, 691 F. Supp. 2d 372, 383 (S.D.N.Y. 2009) ("The law is clear that blanket denials, wholesale evidentiary objections, and counterstatements unsupported by any citations are insufficient to create genuine issues of material fact.") (internal quotation marks omitted).

In this diversity case, the substantive law of New York, the forum state, applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); see also *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

**B.      Whether Defendants are Entitled to Summary Judgment.**

Defendants assert that they are entitled to summary judgment because Plaintiff has failed to establish that she has a right to recover under New York's No-Fault Law, which precludes recovery for both basic economic loss and non-economic loss arising out of negligence in the use or operation of a motor vehicle, unless the claimant has suffered a serious injury.[4] N.Y. Ins. Law § 5104. Basic economic loss is defined as "up to fifty thousand dollars per person[,]" comprised of medical costs, lost earnings, and other reasonable and necessary expenses. N.Y. Ins. Law § 5102(a). "Serious injury" is defined as:

---

[4] Section 5104(a) of the No-Fault Law provides that "in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."

a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). Accordingly, Plaintiff may only recover if she can show economic loss in excess of $50,000 or a serious injury as defined by statute. In enacting the No-Fault Law, the New York legislature sought to "weed out frivolous claims and limit recovery to significant injuries." *Toure v. Avis Rent A Car Sys., Inc.*, 774 N.E.2d 1197, 1199 (N.Y. 2002) (internal quotation marks omitted) (quoting *Dufel v. Green*, 647 N.E.2d 105, 107 (N.Y. 1995)).

### 1. Whether Plaintiff Sustained a Serious Injury under New York's Insurance Law

On a motion for summary judgment, Defendants must "make an evidentiary showing that the plaintiff has not sustained a serious injury as a matter of law." *Evans v. United States*, 978 F. Supp. 2d 148, 162-63 (E.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Lawyer v. Albany*, 530 N.Y.S.2d 904, 906 (N.Y. App. Div. 1988)); *see also id.* at 163 ("The defendant may satisfy this initial burden with unsworn reports by the plaintiff's physicians or with sworn affidavits or affirmations by the defendant's own retained physicians.") (internal quotation marks omitted) (alteration adopted). Once met, the burden shifts to Plaintiff to demonstrate that she, in fact, sustained a "serious injury" as defined by N.Y. Ins. Law § 5102(d). *Id.* (internal quotation marks omitted) (citing *Gaddy v. Eyler*, 591 N.E.2d 1176, 1177 (N.Y. 1992)). "To properly demonstrate a 'serious injury,' a plaintiff must provide 'objective proof of his [or her] injury,' as 'subjective complaints alone are not sufficient.'" *Satterfield v. Maldonado*, 127 F. Supp. 3d 177, 191 (S.D.N.Y. 2015) (quoting *Toure*, 774 N.E.2d at 1199-1200) (alteration adopted). "[A] 'plaintiff must offer admissible evidence in the form of sworn affidavits or

17

reports by physicians, or sworn medical test records, such as MRI reports.'" *Evans*, 978 F. Supp. 2d at 163 (quoting *Rivera v. United States*, 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012)) (alterations adopted).

The No-Fault Law provides for different categories of "serious" injury. Any injury that does not fit into one of those categories constitutes a minor injury for which claimants may not recover. *Licari v. Elliott*, 441 N.E.2d 1088, 1090 (N.Y. 1982). New York's legislature intended for courts, "in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury. . . . The result of requiring a jury trial where the injury is clearly a minor one would perpetuate a system of unnecessary litigation." *Id.* at 1091-92. If Plaintiff suffered no serious injury as a matter of law under the No-Fault Law, then she "has no claim to assert and there is nothing for the jury to decide." *Id.* at 1092.

In her responses to Defendants' Request for Interrogatories, Plaintiff claims that five "serious injur[ies]:" (1) significant disfigurement; (2) permanent loss of use of a body organ, member, function or system; (3) significant limitation of use of a body function or system; (4) permanent consequential limitation of use of a body organ or member; and (5) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. Defendants contest each category.

### i. Whether Plaintiff Sustained a Significant Disfigurement.

"An injury is disfiguring if it alters for the worse a person's natural appearance. A disfigurement is significant if a reasonable person viewing the person's body in its altered state would regard the condition as unattractive, objectionable, or as the object of pity or scorn." *Vega v. Gomez*, No. 11 CV 212 (VB), 2012 WL 4069301, at *6 (S.D.N.Y. July 27, 2012) (citing *Caruso v. Hall*, 477 N.Y.S.2d 722, 724 (N.Y. App. Div. 1984)); *see Sidibe ex rel. Sarata v. Cordero*, 913 N.Y.S.2d 78, 79 (N.Y. App. Div. 2010) (holding that infant plaintiff did not sustain a "significant disfigurement" when photographs

showed only "minor skin discoloration" on infant's face and ear and thus did not support a finding that a reasonable person would view the discoloration as "unattractive, objectionable, or as the subject of pity or scorn") (internal quotation marks omitted). A finding of "significant disfigurement" must be based upon a reasonable person's assessment of the injury, not on the plaintiff's subjective assessment. *Pecora v. Lawrence*, 840 N.Y.S.2d 851, 852-53 (N.Y. App. Div. 2007).

Plaintiff asserts that she "sustain[ed] a scar on her left arm." (Doc. 41-6 at 10.) New York courts are more likely to find that scarring is "significantly disfiguring" if it occurs on the face, is significant in size, or required many stitches or sutures. *Compare Agudelo v. Pan Am. World Airways, Inc.*, 460 N.Y.S.2d 416, 419 (N.Y. App. Div. 1983) (finding existence of triable fact regarding "significant disfigurement" when plaintiff's three scars could not be corrected with plastic surgery, all appeared on face, and one scar was four centimeters long and required seventeen sutures) (internal quotation marks omitted), *and Zulawski v. Zulawski*, 566 N.Y.S.2d 141, 142 (N.Y. App. Div. 1991) (finding jury's determination that plaintiff did not sustain significant disfigurement against weight of evidence when plaintiff "sustained a laceration of his forehead which required [twenty] stitches and left a [two to two and one-half] inch scar on his forehead" which was "still noticeable" nearly six and one-half years later), *with Heller v. Jansma*, 958 N.Y.S.2d 840, 841 (N.Y. App. Div. 2013) (finding that plaintiff failed to raise issue of triable fact regarding significant disfigurement when defendant submitted photographs of one and one-half inch scar on plaintiff's shin, which court described as "imperceptible[,]" even when Plaintiff testified that she was "bothered by the scar"), *and Loiseau v. Maxwell*, 682 N.Y.S.2d 74, 75 (N.Y. App. Div. 1998) (finding that a five by one centimeter scar on plaintiff's lower right leg did not constitute a "significant disfigurement" that a reasonable person would regard as "unattractive, objectionable, or as the subject of pity or scorn") (internal quotation marks omitted).

Plaintiff's January 9, 2018 medical records from Sisters of Charity Hospital as well as her treatment records contain no mention of an accident-related laceration or scar.

There is thus no triable issue of fact regarding whether Plaintiff was "significantly disfigured" by the January 9, 2018 accident.

### ii. Whether Plaintiff Sustained Permanent Loss of Use of a Body Organ, Member, Function, or System.

"[T]o qualify as a serious injury within the meaning of the [No-Fault Law], 'permanent loss of use' must be total." *Oberly v. Bangs Ambulance Inc.*, 751 N.E.2d 457, 460 (N.Y. 2001). Partial injuries, even those that are permanent, do not qualify as "serious injuries" under the "permanent loss of use" category. *Comba v. United States*, 535 F. Supp. 3d 97, 108 (E.D.N.Y. 2021). In *Oberly*, the plaintiff failed to demonstrate permanent loss of use when pain and cramping in his right arm only partially limited his ability to use that arm, rather than a total loss of use. 751 N.E.2d at 458-60. Similarly, in *Davis v. Cottrell*, evidence that the plaintiff's doctor diagnosed her with a "permanent partial disability" of her right shoulder was not enough to constitute a "permanent loss of use[.]" 956 N.Y.S.2d 248, 250 (N.Y. App. Div. 2012) (internal quotation marks omitted).

Defendants point out that none of Plaintiff's medical records "remotely hint that she has sustained a total loss of use of any body part." (Doc. 41-16 at 7.) Dr. Trombitas concluded that Plaintiff "should not be considered disabled at this time[,]" (Doc. 41-10 at 82), and in his verification of treatment for Plaintiff's application for no-fault insurance to GEICO following the accident, he stated Plaintiff's injuries would not "result in significant disfigurement or permanent disability[.]" (Doc. 41-9 at 22.)

As for Plaintiff's carpal tunnel injury and resulting surgery, there is no evidence that Plaintiff suffered a total loss of use of her left wrist. There is also no evidence that the carpal tunnel injury is causally related to the January 9, 2018 accident. The report from Plaintiff's treating physician, Dr. Paterson, does not reference the January 9, 2018 accident, and Dr. Maloney concluded in his IME that the carpal tunnel injury "was not causally related to the [January 9, 2018] accident" and he "found no medical evidence of structural trauma to the elbow or wrists as a result of this accident." (Doc. 41-15 at 15.)

Because there is no evidence that Plaintiff suffered a total loss of use of her left arm or hand or any other body part, Defendants have demonstrated Plaintiff did not suffer a total loss of use of a body organ, member, function, or system.

### iii. Whether Plaintiff Sustained a Significant Limitation of the Use of a Body System or Function.

In response to Defendants' Request for Interrogatories, Plaintiff asserts that she suffered "significant limitation of use to her left arm" and significant limitation from anxiety resulting from PTSD caused by the accident. (Doc. 41-6 at 12, ¶ 6e.) She also states that she has lost fine motor skills in her left hand which caused her to undergo an unsuccessful carpal tunnel surgery.[5]

To establish a significant limitation of the use of a body system or function, there must be "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose[,] and use of the affected body organ, member, function or system[.]" *Paton v. Weltman*, 804 N.Y.S.2d 129, 131 (N.Y. App. Div. 2005). The claimed limitation must be more than "minor, mild or slight[.]" *Licari*, 441 N.E.2d at 1091. "Mere use of the conclusory word 'significant' in the affidavit of a treating physician is not sufficient to establish serious injury[.]" *Flater v. Brennan*, 569 N.Y.S.2d 808, 810 (N.Y. App. Div. 1991). *Compare Licari*, 441 N.E.2d at 1092-93 (finding that plaintiff failed to show significant limitation when examining physician testified that he suffered only a "very mild limitation of movement in his neck and back" and plaintiff's bruised chest and concussion did not cause any significant limitation of use) (internal quotation marks omitted), *with Comba*, 535 F. Supp. 3d at 109 (finding a genuine dispute of material fact

---

[5] Plaintiff further describes these significant limitations as inability to "lift, fold laundry, vacuum[,]" "push a lawn mower[,]" or "grip items[.]" (Doc. 41-6 at 12, ¶ 6e.) She asserts that she "drops things due to pain and loss of fine motor skills in her left hand" and that these issues prompted her to undergo carpal tunnel surgery in February of 2020. *Id.* Despite this procedure, Plaintiff alleges that her symptoms persist. Psychologically, Plaintiff alleges that the accident "limited [her] ability [to] drive/ride in a motor vehicle," especially "on highways, in heavy traffic, or anywhere where there may be a tractor trailer." *Id.*

regarding significant limitation when physician stated that plaintiff's "permanent partial disability . . . resulted[ed] in decreased range of motion, strength, and stability") (internal quotation marks omitted). None of Plaintiff's injuries reflects a significant limitation of her use of a body system or function.

An emotional injury does not qualify as a serious injury under the No-Fault Law if unsupported by objective medical evidence. *See, e.g., Bissonette v. Compo*, 762 N.Y.S.2d 849, 849-50 (N.Y. App. Div. 2003) (granting motion for summary judgment when plaintiff's medical records contained "no examination, diagnosis or treatment of any emotional or psychological condition" and when plaintiff failed to allege that any medical expert causally linked any emotional injury to the relevant accident). As Defendants point out, Plaintiff's medical records contain no evidence that Plaintiff was diagnosed with PTSD, although they show that she complained of anxiety. The objective medical evidence does not show that any emotional injury was causally related to the January 9, 2018 accident.

### iv.   Whether Plaintiff Sustained a Permanent Consequential Limitation of the Use of a Body Organ or Member.

In response to Defendants' Request for Interrogatories, Plaintiff asserts that she is "alleging a loss of the full range of motion in her left arm, as well as the loss of fine motor skills and strength in [her] left hand[,]" which she states "will be ongoing in to the future and [will] cause permanent limitations" to qualify under the "permanent consequential limitation" category.[6] (Doc. 41-4 at 11, ¶ 6d.)

As in the "significant limitation" category, an injury cannot be "mild, minor or [cause a] slight limitation of use" to qualify as serious under the "permanent

---

[6] Plaintiff asserts that she "is unable to hold small household items for prolonged periods of time, struggles to open many items, and at times is forced to use her teeth to accomplish basic tasks for which she formerly would have used her hand." (Doc. 41-4 at 11, ¶ 6d.) Plaintiff further states that she suffers from severe anxiety relating to her left arm and hand issues, which led her to undergo an unsuccessful carpal tunnel surgery.

consequential limitation" category of the No-Fault Law. *See King v. Johnston*, 621 N.Y.S.2d 402, 403 (N.Y. App. Div. 1995).

Plaintiff's medical records do not show any permanent limitation of the use of a body organ or member that is causally related to the January 9, 2018 accident.

> ### v. Whether Plaintiff Sustained a Medically Determined Injury of a Non-Permanent Nature Which Prevented Plaintiff from Performing Substantially All of Her Usual and Customary Activities for Not Less than 90 Days During the 180 Days Immediately Following the Accident.

In her response to Defendants' Request for Interrogatories, Plaintiff asserts that all injuries sustained in the January 9, 2018 crash and all activities affected by the accident "have been ongoing since the accident." (Doc. 41-4 at 13, ¶ 6f.) To show "serious injury" under the "90/180" provision, Plaintiff must have been "curtailed from performing [her] usual activities to a great extent rather than a slight curtailment." *Licari*, 441 N.E.2d at 1091. The ninety-day requirement is a "necessary condition to the application of the statute." *Id.*

Following the accident, Plaintiff claims that her daughters had to cook, clean, and do her laundry for her, that she was "severely impaired in her ability to grocery shop or engage in shopping generally[,]" and was unable to mow the lawn, which is something she used to do regularly. (Doc. 41-4 at 13, ¶ 6f.) She further states that she is "limited in her ability . . . to play with her dogs in any capacity that would use her left arm or hand[,]" cannot sweep, mop, or move baskets of laundry up the stairs, cannot use her arm to take laundry out of the washing machine and put it in the dryer, cannot fold laundry, and has suffered a blood clot on her spine which causes pain to radiate.[7] *Id.*

When claimants are cleared to return to work soon after an accident, the 90/180 category generally does not apply. *See Thornton v. Husted Dairy, Inc.*, 23 N.Y.S.3d 760, 761-62 (N.Y. App. Div. 2015) (observing that defendant established that plaintiff did not

---

[7] In his report, Dr. Maloney notes that Plaintiff's primary care doctor ordered an undated MRI when Plaintiff did not improve after physical therapy, which seemingly showed a "congenital blood tumor on [Plaintiff's] spine." (Doc. 41-15 at 11.)

qualify under 90/180 category when, inter alia, plaintiff was cleared to work less than ninety days after the accident); *see also Echevarria v. Ocasio*, 24 N.Y.S.3d 272, 273 (N.Y. App. Div. 2016) (finding that plaintiff's 90/180 day claim was properly dismissed given testimony indicating that plaintiff returned to work immediately after the accident and was not confined to bed or home); *Figueroa v. Ortiz*, 4 N.Y.S.3d 172, 173 (N.Y. App. Div. 2015) (finding dismissal of 90/180 day claim appropriate when plaintiff testified that she was able to leave home two months after accident and when doctor cleared plaintiff to return to work less than ninety days following the accident, even though plaintiff decided not to return to work).

Defendants point out that at Plaintiff's January 24, 2018 initial evaluation with Dr. Trombitas, he opined that Plaintiff "should not be considered disabled at this time and can . . . return to and perform the normal duties of her previous occupation and her general activities of daily living[.]" (Doc. 41-10 at 82.) Thereafter, no medical practitioner restricted Plaintiff from performing her daily and customary activities for ninety of the 180 days immediately following the accident. There is no evidence that Plaintiff has established a "serious injury" in the 90/180 category.

## 2. Whether Plaintiff's Injuries Were Proximately Caused by Defendant.

If a "serious injury" is established, causation is required for a plaintiff to recover under the No-Fault Law. *See Wood v. Hein Trucking Corp.*, 495 N.Y.S.2d 251, 252 (N.Y. App. Div. 1985) ("As in any other negligence case, [a] plaintiff ha[s] the burden of establishing causation as an element of his [or her] prima facie case under [the No-Fault Law]").

Defendants may prevail on summary judgment "by offering 'persuasive evidence that plaintiff's alleged pain and injuries were related to a preexisting condition'" and thus not causally related to the motor vehicle accident. *Kwitek v. Seier*, 963 N.Y.S.2d 801, 802 (N.Y. App. Div. 2013) (quoting *Carrasco v. Mendez*, 830 N.E.2d 278, 287 (N.Y. 2005)). Defendants, however, may be liable for aggravation of preexisting conditions. *See Sanchez v. Travelers Cos., Inc.*, 658 F. Supp. 2d 499, 507 (W.D.N.Y. 2009) ("A serious

injury may consist of an aggravation of a preexisting condition that was asymptomatic prior to the accident."). Pre-accident, Plaintiff suffered from fibromyalgia, arthritis, and anxiety. She does not allege in her complaint that these preexisting conditions were aggravated by the January 9, 2018 accident, and "aggravation of a preexisting injury or condition is an element of damages which must be affirmatively pleaded and proven before recovery can be allowed[.]" *Rodgers v. New York City Transit Auth.*, 896 N.Y.S.2d 112, 116 (N.Y. App. Div. 2010). To the contrary, Plaintiff asserts she "was not suffering from any [] disabilities, physical or otherwise, at the time of the accident." (Doc. 41-6 at 5, ¶ 5.)

Defendants offer Dr. Maloney's IME report as objective evidence that Plaintiff has not suffered any injury proximately caused by the January 9, 2018 accident. This suffices to sustain Defendants' burden under the No-Fault Law. *See Fathi v. Sodhi*, 44 N.Y.S.3d 406, 408 (N.Y. App. Div. 2017) (holding that defendants demonstrated that plaintiff did not sustain a serious injury through an expert witness opinion which opined that plaintiff's physical injuries were not causally related to the accident). Although Dr. Maloney found that Plaintiff had "sustained a sprain/strain of her left shoulder due to her involvement in the motor vehicle accident of [January 9, 2018]" (Doc. 41-15 at 15), he concluded that "[t]here is no causally related injury or disability to the left shoulder, elbow or wrists as [] pertains to the accident on 1-9-2018" and that there was "no medical evidence of structural trauma to the left shoulder[.]" (Doc. 41-15 at 15.) He also found no evidence of causal relationship between the accident and Plaintiff's carpal tunnel condition.

Because Defendants have satisfied their burden to show that there is no genuine issue of triable fact as to causation under New York's No-Fault Law, Defendants' motion for summary judgment as to the No-Fault Law's "serious injury" provision is GRANTED.

### 3. Whether Plaintiff Has Sustained a Loss in Excess of Basic Economic Loss under New York's Insurance Law.

25

Under the No-Fault Law, a plaintiff may only recover the amount of "basic economic loss" that exceeds $50,000. *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) (internal quotation marks omitted). "Basic economic loss" includes medical expenses, lost wages, and other reasonable and necessary expenses. N.Y. Ins. Law § 5102(a).

GEICO made payments to Plaintiff for medical expenses totaling $4,059.04. Plaintiff has acknowledged that her healthcare costs were covered in full by her insurance provider. She disclaims lost wages or earnings. There is thus no evidence that she suffered a "basic economic loss" in excess of the statutory threshold. *See Rulison v. Zanella*, 501 N.Y.S.2d 487, 488-89 (N.Y. App. Div. 1986) (reversing denial of summary judgment when plaintiffs failed to submit evidence in opposition to defendants' contention that their economic loss did not exceed basic economic loss).

Because there is no genuine issue of triable fact, Defendants' motion for summary judgment as to the No-Fault Law's "basic economic loss" provision is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 41) is GRANTED. Judgment is hereby entered in favor of Defendants Yoerlandy Rubier Gonzalez and Zigi Freight, Inc. against Plaintiff Calli Ott.

SO ORDERED.

Dated this 27ᵗʰ day of December, 2022.

Christina Reiss, District Judge
United States District Court